UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HYDROFLOW USA, LLC, a Washington limited liability company,<br><br>　　　　　　　　Plaintiff,<br>　　　v.<br><br>ECO INTEGRATED TECHNOLOGIES, INC., a Delaware corporation; JESS RAE BOOTH; and WALTER CARLSON,<br><br>　　　　　　　　Defendants. | CASE NO. 2:23-cv-01317-TL<br><br>ORDER ON MOTION FOR PRELIMINARY INJUNCTION |

　　　This is an action for breach of contract, unfair competition, and related claims stemming from the sale of water treatment products. This matter is before the Court on Plaintiff *Hydro*FLOW USA, LLC's Motion for Preliminary Injunction. Dkt. No. 14. Having reviewed Defendants' response (Dkt. No. 29), Plaintiff's reply (Dkt. No. 34), and the relevant record, the Court DENIES the motion.

ORDER ON MOTION FOR
PRELIMINARY INJUNCTION - 1

# I. BACKGROUND

## A. Preliminary Matter

In its motion, Plaintiff relies frequently (and almost entirely) on a declaration from Tal Journo, its Chief Executive Officer. *See* Dkt. No. 7. However, that declaration was stricken on September 20, 2023. *See* Dkt. No. 8. Defendants discuss at length Plaintiff's reliance on this stricken declaration (*see* Dkt. No. 29 at 7–9), and Plaintiff responds that the declaration "was not stricken on evidentiary grounds . . . but rather given the Court's procedural concerns." Dkt. No. 34 at 12. But the *reason* for striking is not material; the issue is that the Journo Declaration *was* stricken, it could have been refiled but never was, and Defendants were not expected to respond to it on Plaintiff's renewed motion. Therefore, the Court will not consider its contents.[1]

## B. Factual Background

Plaintiff *Hydro*FLOW USA, LLC, is a Washington company with its principal place of business in Redmond, Washington. Dkt. No. 1 (Complaint) ¶ 1.1. Plaintiff is the exclusive distributor in the United States and Mexico of *Hydro*FLOW water conditioners that use technology patented by Hydropath Technology Ltd., based in England. *Id.* ¶¶ 2.1–2.2.

Defendant ECO Integrated Technologies is a Delaware corporation with its principal place of business in Fort Worth, Texas. *Id.* ¶ 1.2. Defendant Jess Rae Booth is a resident of Florida and serves as Defendant ECO's Chairman and Chief Executive Officer. *Id.* ¶ 1.3. Defendant Walter Carlson is a resident of Michigan and serves as Defendant ECO's Chief Financial Officer. *Id.* ¶ 1.4.

---

[1] The Court also notes that "[a] conclusory and self-serving declaration by the head of a plaintiff's company is, standing alone, weak evidence" when considering a preliminary injunction. *See Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 896 (N.D. Cal. 2019). Further, even if the Journo Declaration *were* properly before the Court, a review of its contents shows that it would not be material to the Court's decision.

The facts of this case are relatively straightforward. On July 9, 2021, Plaintiff and Defendant ECO entered into a written Distributor Agreement (the "Agreement") that gave Defendant ECO the right to market and sell certain defined products. *Id.* ¶ 2.3; *see* Dkt. No. 1-1 (agreement). Relevant to the instant motion, Article 4.1 of the Agreement requires Defendant ECO to make payments "within thirty (30) days of the date of receipt of Equipment." Dkt. No. 1-1 at 5. Article 7.1 of the Agreement states in part:

> So long as this Agreement remains in effect and for twelve (12) months after the termination of this Agreement by the Distributor, Distributor and its Dealers shall not distribute, sell or act as an agent or representative of any manufacturer or distributor of products that are functionally comparable to *Hydro*FLOW Equipment, or intended to compete directly with *Hydro*FLOW Equipment.

*Id.* at 6. Article 12 states that the Agreement may be terminated if either party "shall fail to timely perform and fulfill in any material respect any obligation or condition required of such Party" under the Agreement (and certain conditions). *Id.* at 8. Finally, Article 13.3 states that the Agreement may be terminated "[i]f the other Party becomes insolvent or fails to pay its debts when they come due." *Id.* at 9.

In June 2023, Plaintiff terminated the Agreement. Dkt. No. 1 ¶ 2.9; Dkt. No. 35-1 at 3 (Plaintiff's "Distributor Agreement Cancelation Email"); *see also* Dkt. No. 29 at 13 (stating that "it is undisputed that Plaintiff terminated the Agreement").

In August 2023, Defendant ECO, through Defendant Booth, sent a shareholder update letter (the "Letter") in which Defendant Booth stated:

> It has now been two years since we entered into a Distributor Agreement with HydroFlow USA, LLC, the Master Distributor of 'HydroFlow Units' that are manufactured by HydroPath, Ltd in the UK. The Distributor Agreement ended in late June 2023. Despite the considerable efforts and investment expended by ECO that we all believed would lead to a very positive revenue-producing business opportunity, that has not been the case. We began April

2022 to create a Dealer Network to supplement ECO's direct sales activities. <u>We currently have 10 Dealers and Master Affiliates that believe that the sale of water treatment units or service agreements are still a viable business model.</u> We have concluded that the HydroFlow Unit's cost are too expensive for ECO to provide Demo units for either our Dealers and Affiliates or for our installations to support sales or service agreement efforts. The high costs necessitate sales prices that are too expensive to produce the level of profitability necessary. We therefore have researched other internationally available alternatives that we can purchase at a much lower price such that we and our Dealer/Affiliates will be in a position to offer our newly sourced water treatment units that are functionally equivalent to HydroFlow Units at approximately 60+% lower prices, each covered by a 5-year manufacturer's warranty. We are exploring several alternatives for the disposition of our existing HydroFlow Unit inventory.

This New Direction will be operated under a wholly owned subsidiary named **ECO ProFlo, LLC**.

Dkt. No. 1-2 (Letter) at 2 (emphases in original). Plaintiff also obtained what it believes to be "a Chinese knock-off" of Plaintiff's own water treatment product, which Defendant ECO has obtained to compete against Plaintiff. *See* Dkt. No. 1 ¶ 2.13 (including photo). Plaintiff believes the two products are "functionally identical." *Id.* ¶ 2.14.

Finally, Plaintiff alleges that, at least at the time of filing, Defendant ECO made the following representation on its website:

> **THE VALUE PROPOSITION:**
> ECO ProFlo offers state-of-the-art, advanced, environmentally friendly water technology sales and services that improve equipment efficiencies and long-term asset life while significantly reducing operating expenses. Other competitive water treatment technologies fall short of ECO ProFlo's solutions. ECO ProFlo units, with unparalleled patented and proven electronic water products and services, will reduce the costs associated with water use.[2]

---

[2] At the time of writing of this order, the Court observes that the same page of Defendant ECO's website does not contain this language. *See PROFLO – ECO Integrated Technologies*, https://perma.cc/M4E9-Q7R2 (visited Feb. 27, 2024).

Dkt. No. 1 ¶ 2.15 (emphasis in original). Plaintiff believes the "ECO ProFlo" units are "not patented [and] have no proven track record or testing to prove their effectiveness." *Id.* ¶ 2.16.

C.  **Procedural History**

On August 24, 2023, Plaintiff commenced this action. Dkt. No. 1. On September 7, 2023, Plaintiff filed an initial motion for preliminary injunction. Dkt. No. 6. That motion, and its declarations, were stricken as improperly filed. Dkt. Nos. 8, 10.

On September 28, 2023, Plaintiff filed the instant motion, which was ultimately renoted for November 11, 2023. Dkt. No. 14; *see also* Dkt. No. 34 (reply). Defendants oppose. Dkt. No. 29. Plaintiff seeks the following injunction binding Defendants and related others:

> a.  Defendants are enjoined from selling, offering for sale, or advertising any products that compete with *Hydro*FLOW's products, including those that utilize Hydropath technology. For the sake of clarity, all products covered by the tradename ECO ProFlo are within the scope of those products Defendants may not advertise, offer for sale, or sell.
>
> b.  Defendants are enjoined from utilizing any of *Hydro*FLOW's Confidential Information as defined in Article 15 of the Distributor Agreement.
>
> c.  Defendants are ordered to remove all references to ECO ProFlo from ECO's website within 48 hours of the entry of this Order.
>
> d.  Defendants are ordered to remove all references to any product that competes with those offered by *Hydro*Flow from ECO's website within 48 hours of the entry of this Order.

Dkt. No. 14-1 (proposed order) at 11.

In addition, on October 26, 2023, Defendants filed a motion to dismiss, which the Court will address in a separate Order. Dkt. No. 28.

## II.  LEGAL STANDARD

A preliminary injunction is an extraordinary remedy that is "never awarded as of right." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The party seeking an injunction

1  must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent
2  preliminary relief; (3) the balance of equities tips in favor of the injunction; and (4) the
3  injunction is in the public interest. *Winter*, 555 U.S. at 20.

4   "All four [*Winter*] elements must be satisfied." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th
5  1180, 1188 (9th Cir. 2022); *see also Winter*, 555 U.S. at 20–22 (rejecting an approach that
6  permitted mere "possibility" of irreparable harm if there is a strong likelihood of success on the
7  merits). However, the Ninth Circuit permits a "sliding scale" approach as to the first and third
8  factors: "When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must
9  raise only 'serious questions' on the merits—a lesser showing than likelihood of success."
10 *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684
11 (9th Cir. 2023) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.
12 2011)); *see also Cottrell*, 632 F.3d at 1134–35 (holding that, after *Winter*, the "serious question"
13 sliding scale survives in the Ninth Circuit, provided that the other two elements are also shown).

14  Injunctions requiring affirmative action are "particularly disfavored." *Garcia v. Google,*
15 *Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320
16 (9th Cir. 1994)). Such injunctions require the moving party to establish "not simply that [it] is
17 likely to succeed," but that "the law and facts *clearly favor* [its] position." *Garcia*, 786 F.3d at 740.

18  **III. DISCUSSION**

19  Plaintiff seeks preliminary injunctive relief against Defendant ECO based on only some
20 of its claims: (1) breach of contract, for Defendant ECO's alleged breach of a non-compete
21 clause; and (2) false advertising, for Defendant ECO's statements regarding some of its water
22 treatment products. *See* Dkt. No. 14 at 5–6, 12–18. The Court considers the likelihood of success
23 on each claim before turning to the other *Winter* factors as appropriate.

24

ORDER ON MOTION FOR
PRELIMINARY INJUNCTION - 6

A.      **Likelihood of Success: Breach of Contract**

To prevail on a breach of contract claim under Washington law, Plaintiff must show an agreement between itself and Defendant ECO, a duty under the agreement, and a breach of that duty. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1072 (9th Cir. 2019) (citing *Fid. & Deposit Co. of Md. v. Dally*, 148 Wn. App. 739, 745, 201 P.3d 1040 (2009)). The Parties "do not dispute the validity or enforceability of the Agreement." Dkt. No. 29 at 11. Instead, the issues are whether Defendant ECO had a non-compete duty under Article 7.1 of the Agreement and whether it breached that duty by the distribution or sale of functionally comparable products.

Here, Plaintiff has not demonstrated a likelihood of success, or even serious questions on the merits, for its breach of contract claim premised on a breach of Article 7.1. In fact, it appears likely that Defendant ECO did not have a non-compete duty here, as it was Plaintiff, not Defendant ECO, that terminated the Agreement. Dkt. No. 1 ¶ 2.9. After all, Article 7.1 plainly states that a non-compete duty exists under two circumstances: (1) "[s]o long as this Agreement remains in effect"; and (2) "for twelve (12) months after the termination of this Agreement *by the Distributor*." Dkt. No. 1-1 at 6 (emphasis added).

Plaintiff nevertheless insists that Defendants' arguments suffer from "three key flaws." Dkt. No. 34 at 12. However, none of the purported flaws can rescue Plaintiff's request.

First, Plaintiff asserts that Defendant ECO does not deny that it breached the Agreement in multiple ways. Dkt. No. 34 at 12. But the Parties agree that Plaintiff, not Defendant ECO, terminated the Agreement; the identity of the party who terminated is the material fact under Article 7.1, not that party's *reason* for termination. Plaintiff also contends (for the first time in its reply brief) that "Eco initiated its plan to sell ProFlo units prior to termination of the Distributor Agreement, which standing alone constituted a material breach of Section 7 of the Distributor Agreement." *Id*. In support, Plaintiff offers a declaration from Mark Timm, a former Defendant

ECO board member, who states that "ECO ordered ProFlo samples prior to [Plaintiff] *Hydro*FLOW terminating its Distributing Agreement with ECO." Dkt. No. 38 ¶ 8. But the Court cannot conclude from an ordering of samples that Defendant ECO ultimately distributed or sold comparable products during that time. It is also not clear that this alleged act even violates Article 7.1, which requires only that Defendant ECO "shall not distribute, sell or act as an agent or representative of any manufacturer or distributor of products." Dkt. No. 1-1 at 6. Further, there are no allegations in the Complaint that Defendant ECO distributed or sold functionally comparable products while the Agreement was still in effect. *See* Dkt. No. 1. And the Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).[3]

Second, Plaintiff argues that "[Defendant] ECO is not entitled to offensively enforce provisions of the Distributor Agreement." Dkt. No. 34 at 13. That would appear to characterize the situation precisely backwards. It is Plaintiff, in this action and in this motion, that is seeking to enforce Article 7.1 of the Agreement. In opposition, Defendant ECO is seeking to *preclude* enforcement of Article 7.1 by arguing that it does not have a non-compete duty under that provision. It is not an act of "enforcement" for a party to defend itself against an enforcement action by arguing for a contractual interpretation that excuses its performance.

Third, Plaintiff argues that Defendant ECO's interpretation of the Agreement leads to absurd results and thus should be rejected. Dkt. No. 34 at 13–14. As Plaintiff puts it, that

---

[3] Plaintiff also discusses Article 15.1 of the Agreement, which concerns confidential information. *See* Dkt. No. 14 at 8–9, 13; *see also* Dkt. No. 1-1 at 10. However, contrary to Plaintiff's assertion (*see* Dkt. No. 34 at 13), Plaintiff does not allege breach of this provision in its Complaint, as it does not identify Article 15.1 as a relevant provision that was breached or allege the misuse of confidential information as an injury. *See* Dkt. No. 1 ¶¶ 3.1–6.9. Therefore, Plaintiff may not seek relief on this purported claim, and the Court will not analyze it. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (holding that "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint").

interpretation "would mean that [Defendant] ECO could deliberately breach the Distributor Agreement in as many ways and as badly at [sic] it wished until [Plaintiff] was forced to terminate the contract, only to then have the right to compete against [Plaintiff] however it wishes." *Id.* at 13. Plaintiff asserts that "allowing [Defendant ECO] to escape its exclusivity commitment would work a substantial injustice on [Plaintiff]." *Id.* at 14.

In so arguing, Plaintiff seeks to escape the consequences of its choices, both in its negotiation of the Agreement and its pursuit of a remedy. Under Washington law, courts "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Skansgaard v. Bank of Am., N.A.*, 896 F. Supp. 2d 944, 947 (W.D. Wash. 2011) (quoting *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005)). "If the language of a contract is clear and unambiguous, the Court must 'enforce the contract as written; it may not modify the contract or create ambiguity where none exists.'" *Id.* (quoting *Lehrer v. State Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 515, 5 P.3d 722 (2000)). It is difficult to imagine clearer or less ambiguous language than the relevant terms of Article 7.1—language that was presumably the product of negotiation between Plaintiff and Defendant ECO. It is not absurd to imagine that a non-compete restriction only applies if the distributor (not the supplier) walks away from an agreement, presumably as a deterrent against the distributor launching a competing product. The Court "will not indulge in artificial interpretations or abnormal implications in order to save [Plaintiff] from a bad bargain." *Barber v. Ankeny*, 173 Wn. App. 1019, 2013 WL 619568, at *3 (2013) (citing *Kanaskat Lumber & Shingle Co. v. Cascade Timber Co.*, 80 Wn. 561, 564, 142 P. 15 (1914)).

Moreover, Plaintiff chose to terminate the Agreement rather than affirm and enforce the Agreement through a suit for damages or even equitable relief. *See Colo. Structures, Inc. v. Ins. Co. of the W.*, 161 Wn.2d 577, 788–89, 167 P.3d 1125 (2007) ("If the breach is 'material,' the

promisee has an election: He or she may treat the breach as a failure of a condition that excuses further performance and thus terminate the contract, or he or she may waive the condition and allow performance to continue. Regardless of whether the breach is 'material,' the promisee can recover damages."). Had Plaintiff been concerned enough by the prospect of Defendant ECO's immediate competition, it could have chosen differently.

Therefore, as to the breach of contract claim, Plaintiff's motion is DENIED.

**B.      Likelihood of Success: False Advertising**

To prevail on a false advertising claim under the Lanham Act, Plaintiff must show

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)); *see also Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008) (defining what constitutes a statement in a commercial advertisement).

Defendants correctly note that Plaintiff's argument "relies on the Journo Declaration, which is not before the Court." Dkt. No. 29 at 16; *see supra* Section I.A. Plaintiff's only evidence comes on reply: (1) a declaration by David Huffman, shareholder in and former Advisory Board member for Defendant ECO (Dkt. No. 36); and (2) a declaration by Scott Smith, Defendant ECO's former Chief Sustainability Officer (Dkt. No. 37). As previously discussed, the Court will not consider new arguments or evidence submitted for the first time on reply. *See*

1 *Zamani*, 491 F.3d at 997; *Atigeo LLC v. Offshore Ltd., D.*, No. C13-1694, 2014 WL 239096, at *8 (W.D. Wash. Jan. 22, 2014) ("It is clear that in the Ninth Circuit new issues and evidence may not be raised in reply briefs." (citing *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996)).

Even if the Court were to consider the late-filed declarations, Plaintiff has not demonstrated a likelihood of success on its claim of false advertising. Huffman and Smith both testify that they "have investigated the veracity of claims made by [Defendant] ECO on its website that ECO ProFlo units have 'unparalleled patented and proven electronic water products and services.'" Dkt. No. 36 ¶ 13; Dkt. No. 37 ¶ 7. Both then make a general statement that they found nothing to support the claims. *See* Dkt. No. 36 ¶ 13 ("My investigation indicates that such claims are false, as I have been unable to find any evidence to support such assertions."); Dkt. No. 37 ¶ 8 ("Despite having conducted substantial research, I have been unable to locate any patents owned by [Defendant] ECO and covering ECO ProFlo devices/units. Similarly, I have been unable to locate any product literature or other information otherwise supporting the claim that ECO Profile devices are 'proven' or otherwise have a track record."). However, neither Huffman nor Smith provide even minimal details of what their "investigation" entailed, such that the Court can even begin to assess the value of their statements. These vague declarations, without more, may be sufficient to survive a motion to dismiss but are insufficient to establish serious questions on the merits, let alone a likelihood of success.

In addition, Plaintiff requests an injunction requiring affirmative action as to statements on Defendant ECO's website. *See* Dkt. No. 14-1 at 11. But such an injunction requires Plaintiff to show "the law and facts *clearly favor* [its] position," *Garcia*, 786 F.3d at 740, which Plaintiff does not show. While discovery may yield more evidence on the claim, the evidence (belatedly) presented at this time is insufficient to warrant the entry of a preliminary injunction.

1   Finally, Plaintiff argues that it "can establish propositions by proving a lack of evidence
2   exists to the contrary." Dkt. No. 34 at 15. Even if Plaintiff offered declarations that, on their face,
3   made out this proof (which it did not), Plaintiff cites to caselaw that is inapt. First, Plaintiff's
4   cases outline the familiar standards for summary judgment, not entitlement to preliminary relief.
5   *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010); *t'Bear v. Forman*, 359 F.
6   Supp. 3d 882, 903–04 (N.D. Cal. 2019). But this matter is at the preliminary relief stage, not
7   summary judgment. Second, the party seeking a preliminary injunction—here, the Plaintiff—has
8   the burden to establish a likelihood of success. *See Pimentel-Estrada v. Barr*, 464 F. Supp. 3d
9   1225, 1234 (W.D. Wash. 2020) ("The moving party bears the burden of persuasion and must
10  make a clear showing that he is entitled to such relief." (citing *Winter*, 555 U.S. at 22)).

Therefore, as to the false advertising claim, Plaintiff's motion is DENIED.

C.   **Remaining *Winter* Factors**

Because the Court finds that Plaintiff has not established a likelihood of success or serious questions on the merits for either claim, its inquiry ends, and it need not address the remaining *Winter* factors.

IV.   CONCLUSION

Accordingly, Plaintiff's Motion for Preliminary Injunction (Dkt. No. 14) is DENIED.

Dated this 7th day of March 2024.

Tana Lin
United States District Judge