1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

HYDROFLOW USA, LLC, a Washington
limited liability company,

12

Plaintiff,

13
v.

14

ECO INTEGRATED TECHNOLOGIES,
INC., a Delaware corporation; JESS RAE
BOOTH; and WALTER CARLSON,

15

16

Defendants.

CASE NO. 2:23-cv-01317-TL

ORDER ON MOTION TO DISMISS

17

18        This is an action for breach of contract, unfair competition, and related claims stemming

19   from the sale of water treatment products. This matter is before the Court on Defendants' Partial

20   Motion to Dismiss Pursuant to Rule 12(b)(6). Dkt. No. 28. Having reviewed Plaintiff

21   *Hydro*FLOW USA, LLC's response (Dkt. No. 39), Defendants' reply (Dkt. No. 40), and the

22   relevant record, the Court GRANTS IN PART and DENIES IN PART the motion with leave to amend.

23                          I.       BACKGROUND

24        The following allegations are recited as pleaded in the Complaint. *See* Dkt. No. 1.

1

**A.      Factual Background**

2          Plaintiff *Hydro*FLOW USA, LLC, is a Washington company with its principal place of

3   business in Redmond, Washington. Dkt. No. 1 ¶ 1.1. Plaintiff is the exclusive distributor in the

4   United States and Mexico of *Hydro*FLOW water conditioners that use technology patented by

5   Hydropath Technology Ltd., based in England. *Id.* ¶¶ 2.1–2.2.

6          Defendant ECO Integrated Technologies is a Delaware corporation with its principal

7   place of business in Fort Worth, Texas. *Id.* ¶ 1.2. Defendant Jess Rae Booth is a resident of

8   Florida and serves as Defendant ECO's Chairman and Chief Executive Officer. *Id.* ¶ 1.3.

9   Defendant Walter Carlson is a resident of Michigan and serves as Defendant ECO's Chief

10  Financial Officer. *Id.* ¶ 1.4.

11         On July 9, 2021, Plaintiff and Defendant ECO entered into a written Distributor

12  Agreement (the "Agreement") that gave Defendant ECO the right to market and sell certain

13  defined products. *Id.* ¶ 2.3; *see* Dkt. No. 1-1 (agreement). Since 2021, Defendant ECO

14  continuously communicated with and ordered products from Plaintiff. Dkt. No. 1 ¶ 2.4. Plaintiff

15  also conducted extensive training sessions with Defendant ECO, its employees, and its

16  independent sales representatives concerning Plaintiff's products, related technology, and other

17  business matters. *Id.* ¶ 2.5.

18         The Agreement contains certain provisions identified and pleaded in the Complaint.

19  Article 4.1 of the Agreement requires Defendant ECO to make payments "within thirty (30) days

20  of the date of receipt of Equipment." Dkt. No. 1-1 at 5; Dkt. No. 1 ¶ 2.6. Article 7.1 of the

21  Agreement states in part:

22                 So long as this Agreement remains in effect and for twelve (12)
                   months after the termination of this Agreement by the Distributor,
23                 Distributor and its Dealers shall not distribute, sell or act as an agent
                   or representative of any manufacturer or distributor of products that

24

are functionally comparable to *Hydro*FLOW Equipment, or
intended to compete directly with *Hydro*FLOW Equipment.

Dkt. No. 1-1 at 6; Dkt. No. 1 ¶ 2.10. Article 12 states that the Agreement may be terminated if

either party "shall fail to timely perform and fulfill in any material respect any obligation or

condition required of such Party" under the Agreement (and certain conditions). Dkt. No. 1-1

at 8; Dkt. No. 1 ¶ 2.7. Finally, Article 13.3 states that the Agreement may be terminated "[i]f the

other Party becomes insolvent or fails to pay its debts when they come due." Dkt. No. 1-1 at 9;

Dkt. No. 1 ¶ 2.8.

In June 2023, Plaintiff terminated the Agreement. Dkt. No. 1 ¶ 2.9. In August 2023,

Defendant ECO, through Defendant Booth, sent a shareholder update letter (the "Letter") in

which Defendant Booth stated:

> It has now been two years since we entered into a Distributor
> Agreement with HydroFlow USA, LLC, the Master Distributor of
> 'HydroFlow Units' that are manufactured by HydroPath, Ltd in the
> UK. The Distributor Agreement ended in late June 2023. Despite
> the considerable efforts and investment expended by ECO that we
> all believed would lead to a very positive revenue-producing
> business opportunity, that has not been the case. We began April
> 2022 to create a Dealer Network to supplement ECO's direct sales
> activities. We currently have 10 Dealers and Master Affiliates that
> believe that the sale of water treatment units or service agreements
> are still a viable business model. We have concluded that the
> HydroFlow Unit's cost are too expensive for ECO to provide
> Demo units for either our Dealers and Affiliates or for our
> installations to support sales or service agreement efforts. The high
> costs necessitate sales prices that are too expensive to produce the
> level of profitability necessary. We therefore have researched other
> internationally available alternatives that we can purchase at a
> much lower price such that we and our Dealer/Affiliates will be in
> a position to offer our newly sourced water treatment units that are
> functionally equivalent to HydroFlow Units at approximately
> 60+% lower prices, each covered by a 5-year manufacturer's
> warranty. We are exploring several alternatives for the disposition
> of our existing HydroFlow Unit inventory.
>
> This New Direction will be operated under a wholly owned
> subsidiary named **ECO ProFlo, LLC**.

Dkt. No. 1-2 (Letter) at 2 (emphases in original); Dkt. No. 1 ¶ 2.12. Plaintiff also obtained what it believes to be "a Chinese knock-off" of Plaintiff's own water treatment product that it alleges Defendant intends to distribute in direct competition with Plaintiff. *See* Dkt. No. 1 ¶ 2.13 (including photo). Plaintiff believes the two products are "functionally identical." *Id.* ¶ 2.14.

In addition, Plaintiff alleges that, at least at the time of filing, Defendant ECO made the following representation on its website:

> **THE VALUE PROPOSITION:**
> ECO ProFlo offers state-of-the-art, advanced, environmentally friendly water technology sales and services that improve equipment efficiencies and long-term asset life while significantly reducing operating expenses. Other competitive water treatment technologies fall short of ECO ProFlo's solutions. ECO ProFlo units, with unparalleled patented and proven electronic water products and services, will reduce the costs associated with water use.

Dkt. No. 1 ¶ 2.15 (emphasis in original). Plaintiff believes the "ECO ProFlo" units are "not patented [and] have no proven track record or testing to prove their effectiveness." *Id.* ¶ 2.16.

Finally, Plaintiff alleges that Defendant ECO, through Defendants Booth and Carlson, and with the aid of certain named employees, "have entered into a conspiracy and combination with the intent to wrongfully compete against [Plaintiff] by selling 'ECO ProFlo' products, and to use and disseminate into interstate commerce untrue and false statements regarding [Plaintiff's] products and 'ECO ProFlo' products." *Id.* ¶ 2.18. The named employees "were all exposed to [Plaintiff] training seminars provided to [Defendant] ECO and are intimately aware of Hydropath technology, [Plaintiff] sales strategies, and related confidential information." *Id.* ¶ 2.19.

**B.    Procedural History**

On August 24, 2023, Plaintiff commenced this action. Dkt. No. 1. Plaintiff brings claims for breach of contract and breach of implied duty of good faith and fair dealing (*id.* ¶¶ 3.1–3.7), civil conspiracy (*id.* ¶¶ 4.1–4.4), declaratory relief (*id.* ¶¶ 5.1–5.4), and violations of the federal

Lanham Act and the Washington Consumer Protection Act ("WCPA") (*id.* ¶¶ 6.1–6.9). On September 7, 2023, Plaintiff filed an initial motion for preliminary injunction. Dkt. No. 6. That motion, and its declarations, were stricken as improperly filed. Dkt. Nos. 8, 10. On September 28, 2023, Plaintiff filed a renewed motion for a preliminary injunction (Dkt. No. 14), which was denied (Dkt. No. 47). Defendants now bring the instant partial motion to dismiss for failure to state a claim. Dkt. No. 28; *see also* Dkt. No. 40 (reply). Plaintiff opposes. Dkt. No. 39.

## II.   LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

1

### III.   DISCUSSION

2      Defendants move to dismiss three claims:[1] (1) breach of contract for violation of

3  Article 7.1 (Dkt. No. 28 at 8–10);[2] (2) breach of the implied duty of good faith and fair dealing

4  (*id.* at 10–12); and (3) civil conspiracy (*id.* at 12–13). Defendants also contend that amendment is

5  futile. *Id.* at 13–14.

6  **A.   Breach of Contract**

7      To prevail on a breach-of-contract claim under Washington law, Plaintiff must show an

8  agreement between itself and Defendant ECO, a duty under the agreement, and a breach of that

9  duty. *See Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1072 (9th Cir. 2019) (citing *Fid. &*

10  *Deposit Co. of Md. v. Dally*, 148 Wn. App. 739, 745, 201 P.3d 1040 (2009)).

11      Plaintiff alleges that "[Defendant] ECO is offering for sale, in violation of Article 7 of the

12  Distributor Agreement, products that are claimed to be functionally comparable to [Plaintiff's]

13  Equipment." Dkt. No. 1 ¶ 3.3. Defendants argue that Plaintiff's claim fails because Defendant

14  ECO "does not owe Plaintiff a duty of non-competition." Dkt. No. 28 at 9.

15      As discussed in its Order on Plaintiff's motion for a preliminary injunction, the Court

16  agrees with Defendants, and Plaintiff's claim based on Article 7.1 will be dismissed accordingly.

17  *See* Dkt. No. 47 at 7–10. Contrary to Plaintiff's assertion, Defendant ECO did not have a non-

18  compete duty here, as it was Plaintiff, not Defendant ECO, that terminated the Agreement. Dkt.

19

---

20  [1] Defendants do not seek dismissal of Plaintiff's request for declaratory relief or its claims under the Lanham Act and WCPA.

[2] Defendants state that they do not seek (at this stage) dismissal of Plaintiff's breach of contract claim for failure to
21  make payments under the Agreement. *See* Dkt. No. 28 at 9. In addition, Plaintiff contends that Defendant ECO used
Plaintiff's confidential and proprietary information in violation of Article 15 of the Agreement (*see* Dkt. No. 39
22  at 11). However, that violation does not appear to be alleged anywhere in the Complaint. To the extent Plaintiff tries
to expand the scope of this claim in its response (*see* Dkt. No. 39 at 11), the Court rejects its efforts. *See Ariz. All.*
23  *for Cmty. Health Ctrs. v. Ariz. Health Care Cost Containment Sys.*, 47 F. 4th 992, 998 n.1 (9th Cir. 2022) (on appeal
of motion to dismiss, declining to address new theories not alleged in complaint). However, the Court will allow
24  Plaintiff to amend its complaint, so Plaintiff may add this claim to its amended complaint. Any addition(s) will be
subject to challenge by Defendants on a subsequent motion to dismiss, if appropriate.

No. 1 ¶ 2.9. After all, Article 7.1 plainly states that a non-compete duty exists under two circumstances: (1) "[s]o long as this Agreement remains in effect"; and (2) "for twelve (12) months after the termination of this Agreement *by the Distributor*." Dkt. No. 1-1 at 6 (emphasis added). Neither circumstance is alleged in the Complaint.

Plaintiff nevertheless insists that "[Defendant] ECO's analysis misunderstands or ignores portions of Washington contractual interpretation law." Dkt. No. 39 at 11; *see id.* at 11–12. However, Plaintiff's arguments cannot rescue its claim.

First, Plaintiff argues that "to grant [Defendant] ECO's motion . . . would result in a fundamentally absurd interpretation of the Distributor Agreement." Dkt. No. 39 at 12. As Plaintiff puts it, such a ruling would hold that "[Defendant] ECO had the right to deliberately breach the Distributor Agreement in as many ways and as badly at [sic] it wished until [Plaintiff] was forced to terminate the contract, only to then have the right to compete against [Plaintiff] however it wishes." *Id.* Plaintiff asserts that "allowing [Defendant ECO] to escape its exclusivity commitment would work a substantial injustice on [Plaintiff]." *Id.* at 14.

In so arguing, Plaintiff seeks to escape the consequences of its choices, both in its negotiation of the Agreement and its pursuit of a remedy. Under Washington law, courts "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Skansgaard v. Bank of Am., N.A.*, 896 F. Supp. 2d 944, 947 (W.D. Wash. 2011) (quoting *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005)). "If the language of a contract is clear and unambiguous, the Court must 'enforce the contract as written; it may not modify the contract or create ambiguity where none exists.'" *Id.* (quoting *Lehrer v. State Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 515, 5 P.3d 722 (2000)). It is difficult to imagine clearer or less ambiguous language than the relevant terms of Article 7.1—language that was presumably the product of

1    negotiation between Plaintiff and Defendant ECO. It is not absurd to imagine that a non-compete

2    restriction only applies if the distributor (not the supplier) walks away from an agreement,

3    presumably as a deterrent against the distributor launching a competing product. The Court "will

4    not indulge in artificial interpretations or abnormal implications in order to save [Plaintiff] from

5    a bad bargain." *Barber v. Ankeny*, 173 Wn. App. 1019, 2013 WL 619568, at *3 (2013) (citing

6    *Kanaskat Lumber & Shingle Co. v. Cascade Timber Co.*, 80 Wn. 561, 564, 142 P. 15 (1914)).

7             Moreover, Plaintiff chose to terminate the Agreement rather than affirm and enforce the

8    Agreement through a suit for damages or even equitable relief. *See Colo. Structures, Inc. v. Ins.*

9    *Co. of the W.*, 161 Wn.2d 577, 788–89, 167 P.3d 1125 (2007) ("If the breach is 'material,' the

10   promisee has an election: He or she may treat the breach as a failure of a condition that excuses

11   further performance and thus terminate the contract, or he or she may waive the condition and

12   allow performance to continue. Regardless of whether the breach is 'material,' the promisee can

13   recover damages."). Had Plaintiff been concerned enough by the prospect of Defendant ECO's

14   immediate competition, it could have chosen differently.

15            Second, Plaintiff argues that "as of the first time [Defendant] ECO breached the

16   Distributor Agreement, which by definition was well-before its termination, [Defendant] ECO

17   lost the right to enforce any provisions in the Distributor Agreement for one year following its

18   termination." Dkt. No. 39 at 12. But that would appear to characterize the situation precisely

19   backwards. It is Plaintiff, in this action, that is seeking to enforce Article 7.1 of the Agreement.

20   In opposition, Defendant ECO is seeking to *preclude* enforcement of Article 7.1 by arguing that

21   it does not have a non-compete duty under that provision. It is not an act of "enforcement" for a

22   party to defend itself against an enforcement action by arguing for a contractual interpretation

23   that excuses its performance. And as discussed above, the Court finds that Defendant ECO was

24   not under a duty of non-competition after Plaintiff terminated the Agreement.

Still, contrary to Defendants' assertion, it is not "evident" (Dkt. No. 28 at 14) that amendment would be futile, as there may be additional facts to support this claim.[3] *See* Dkt. No. 39 at 17 (noting "new specific facts showing that [Defendant] ECO began breaching the Distributor Agreement prior to its termination").

Therefore, as to Plaintiff's breach-of-contract claim for violation of Article 7.1, Defendants' motion is GRANTED with leave to amend.

## B.   Duty of Good Faith and Fair Dealing

While "'[t]here is in every contract an implied duty of good faith and fair dealing,'" that duty "is not free-floating, but 'arises only in connection with terms agreed to by the parties.'" *Est. of Carter v. Carden*, 11 Wn. App. 2d 573, 583–84, 455 P.3d 197 (2019) (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). "If there is no contractual duty, there is nothing that must be performed in good faith." *U.S. Bank Nat'l Ass'n v. Tait*, No. C16-767, 2016 WL 5141990, at *7 (W.D. Wash. Sept. 21, 2016). Still, "a violation of the duty of good faith and fair dealing does not require a breach of the underlying contract." *Smartwings, a.s. v. Boeing Co.*, No. C21-918, 2022 WL 579342, at *6 (W.D. Wash. Feb. 25, 2022); *see also Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 111–12, 323 P.3d 1036 (2014) (holding that the duty of good faith and fair dealing can arise even when there is no breach of an express contract term).

Plaintiff alleges that Defendants' actions "constitute . . . breaches of the implied duty of good faith and fair dealing implied into the Distributor Agreement by the operation of Washington law." Dkt. No. 1 ¶ 3.4. Defendants argue that Plaintiff does not allege enough details

---

[3] On reply, Defendants argue for the first time that additional considerations weigh against leave to amend. *See* Dkt. No. 40 at 12–16 (arguing bad faith, undue delay, and prejudice). However, the Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Even so, those considerations do not preclude amendment.

of any contractual violations to support this claim. *See* Dkt. No. 28 at 11–12. Plaintiff responds that Defendant ECO violated its implied duty by taking steps to implement plans for competing products while the Agreement was still in place. *See* Dkt. No. 39 at 13. Defendants point out that any of Defendant ECO's acts *before* the Agreement was terminated are not pleaded in the Complaint. *See* Dkt. No. 40 at 10–11.

The Court finds that Plaintiff has sufficiently plead a claim for the breach of the implied duty. Defendants explicitly do not challenge (at this stage) Plaintiff's claim for breach of contract for failure to make payments due under the Agreement. *See* Dkt. No. 1 ¶ 3.2; Dkt. No. 28 at 9. Thus, on this basis alone, Plaintiff's claim can survive as derivative of this alleged failure to perform a contractual duty. *See Badgett*, 116 Wn.2d at 569 (noting that the duty of good faith requires that "the parties perform in good faith the obligations imposed by their agreement").

However, in its response, Plaintiff asserts that its implied-duty claim is rooted instead in Defendant ECO's purported effort to compete with Plaintiff while the Agreement was still in effect. Dkt. No. 39 at 13. But Plaintiff improperly relies in part on a factual declaration (Dkt. No. 38) submitted in support of its motion for a preliminary injunction, which the Court may not consider on a motion to dismiss. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) . . . ."). Beyond that declaration, Plaintiff does not allege *any* pre-termination actions by Defendants that would support an implied duty claim. The Court rejects Plaintiff's effort to base its implied duty claim on unpled allegations.[4]

Therefore, as to Plaintiff's implied-duty claim, Defendants' motion is DENIED.

---

[4] As noted above, however, the Court will allow Plaintiff to amend its complaint, so it may also add the supporting allegations to its amended complaint. *See supra* n.2.

C.   **Civil Conspiracy**

"A Washington civil conspiracy claim requires that a plaintiff allege that (1) two or more people contributed to accomplish an unlawful purpose or combined to accomplish a lawful purpose by unlawful means, and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." *Caliber Home Loans, Inc. v. CrossCountry Mortg., LLC*, No. C22-616, 2023 WL 2711546, at *7 (W.D. Wash. Mar. 30, 2023) (citing *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020)); *accord All Star Gas, Inc., of Wash. v. Bechard*, 100 Wn. App. 732, 740, 998 P.2d 367 (2000).

Plaintiff alleges that Defendants, with the assistance of certain employees, "have entered into a conspiracy and combination with the intent to wrongfully compete against [Plaintiff] by selling 'ECO ProFlo' products, and to use and disseminate into interstate commerce untrue and false statements regarding [Plaintiff's] products and 'ECO ProFlo' products." Dkt. No. 1 ¶ 2.18; *see also id.* ¶¶ 4.1–4.4. Defendants argue that the claim should be dismissed because Plaintiff does not allege the existence of an agreement for an unlawful purpose. Dkt. No. 28 at 12–13; Dkt. No. 40 at 11–12. Plaintiff responds that there is evidence that Defendants obtained competitive products before the Agreement was terminated and intentionally refused to make payments under the agreement. Dkt. No. 39 at 14–16.

The Court finds that Plaintiff has not sufficiently alleged a claim for civil conspiracy. Again, Plaintiff relies heavily on factual declarations submitted in support of its motion for a preliminary injunction (*see* Dkt. No. 39 at 15 (citing Dkt. Nos. 37, 38)), which the Court may not consider at this stage. *See Khoja*, 899 F.3d at 998. With the few allegations that remain, Plaintiff argues that it has alleged "a claim for civil conspiracy that began *prior to termination* of the Distributor Agreement." *Id.* (emphasis added). Plaintiff cites the Letter (*see* Dkt. No. 1-2), but the Letter was issued *after* the Agreement was terminated, when Defendant ECO no longer owed

Plaintiff a duty of non-competition. Plaintiff also cites its allegations concerning false statements about Defendant ECO's products (*see* Dkt. No. 1 ¶¶ 6.1–6.9), but many of these allegations are legal conclusions, and the others are not probative of whether Defendants entered an agreement to act unlawfully. *See All Star Gas*, 100 Wn. App. at 740 ("[When] the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient." (quoting *Lewis Pac. Dairymen's Ass'n v. Turner*, 50 Wn.2d 762, 777, 314 P.2d 625 (1957))).

Still, it is again not evident that amendment would be futile, as there may be additional facts to support this claim. *See* Dkt. No. 39 at 17 (noting that Plaintiff has "continued to investigate the allegations underlying this lawsuit").

Therefore, as to Plaintiff's civil-conspiracy claim, Defendants' motion is GRANTED with leave to amend.

## IV.   CONCLUSION

Accordingly, it is hereby ORDERED:

(1)   Defendants' Partial Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. No. 28) is GRANTED IN PART and DENIED IN PART.

    (a)   Plaintiff's breach-of-contract claim based on Article 7.1 of the Agreement is DISMISSED with leave to amend.

    (b)   Plaintiff's civil-conspiracy claim is DISMISSED with leave to amend.

    (c)   As to Plaintiff's implied-duty claim, the motion is DENIED.

(2)   Should Plaintiff choose to amend, it SHALL file its First Amended Complaint **within thirty (30) days** of this Order.

(3)   In light of this Order, the case schedule (Dkt. No. 45) is STRICKEN.

    (a)     If an amended complaint is filed, the Parties SHALL meet and confer to propose a new case schedule **within fourteen (14) days** of the filing of the First Amended Complaint.

    (b)     If an amended complaint is *not* filed, the Parties SHALL meet and confer to propose a new case schedule **within forty-five (45) days** of this Order.

Dated this 11th day of March 2024.

Tana Lin
United States District Judge