1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

HYDROFLOW USA, LLC, a Washington
limited liability company,

CASE NO. 2:23-cv-01317-TL

12

Plaintiff,

ORDER ON MOTION FOR
ALTERNATIVE SERVICE

13

v.

14

ECO INTEGRATED TECHNOLOGIES,
INC., a Delaware corporation; JESS RAE
BOOTH; WALTER CARLSON; and
PEYTON JACKSON,

15
16

Defendants.

17
18
19

        This is an action for breach of contract, unfair competition, and related claims stemming

20

from the sale of water treatment products. This matter is before the Court on Plaintiff

21

*Hydro*FLOW USA, LLC's Motion for Alternative Service. Dkt. No. 55. Having considered the

22

relevant record, the Court DENIES the motion and further DISMISSES WITHOUT PREJUDICE

23

Defendant Peyton Jackson from this matter.

24

## I.    BACKGROUND

The Court assumes familiarity with the facts of the case. Relevant to the instant motion, on October 26, 2023, Defendants filed a partial motion to dismiss for failure to state a claim. Dkt. No. 28. On March 11, 2024, the Court dismissed Plaintiff's breach of contract and civil-conspiracy claims with leave to amend. Dkt. No. 48. Plaintiff subsequently filed an amended complaint on April 5, adding Defendant Jackson as a party to the action. Dkt. No. 49. Plaintiff now alleges that Defendant Jackson is one of the architects of Defendant ECO Integrated Technologies, Inc. ("ECO")'s plan to wrongfully obtain products competitive to Plaintiff in contravention of a now-terminated Distributor Agreement established between Plaintiff and Defendant ECO. *See, e.g.*, *id.* ¶¶ 2.19–2.22.

Upon adding Defendant Jackson, Plaintiff made multiple attempts at completing service. On May 22, Plaintiff first contacted Washington Legal Messengers ("WLM") to locate the address of Defendant Jackson. Dkt. No. 56 (Rosencrantz declaration) ¶ 3. In a May 28 response to Plaintiff's request, WLM provided two addresses as the result of a "skip trace": 1450 Wynkoop Street Apt 1C, Denver CO 80202 ("Wynkoop Property") and 1360 South Milwaukee Street, Denver, CO 80210 ("Milwaukee Property"). *Id.* ¶ 4. The Wynkoop Property is believed to be Defendant Jackson's personal residence and the Milwaukee Property is believed to be either Defendant Jackson's new address or his adult daughter's home. Dkt. No. 56-1 (email exchange with WLM) at 2.

A process server made four attempts to serve Defendant Jackson at the Wynkoop Property: (1) on Thursday, May 30, service was attempted at 2:58 p.m.; (2) on Monday, June 3, service was attempted at 9:16 a.m.; (3) on Tuesday, June 4, service was attempted at 7:25 p.m.; and (4) on Wednesday, June 5, service was attempted at 7:38 a.m. The building was inaccessible on each attempt. *See* Dkt. No. 56-2 (affidavit of non-service).

1          Four additional attempts to serve Defendant Jackson at the Milwaukee Property were

2   made. On Thursday, June 13, at 4:35 p.m., a process server asked neighbors about house 1360 at

3   4:35 pm, to which they responded that they were unaware of who the residents are and that no

4   one was home at that address. *See* Dkt. No. 56-3 (affidavit of non-service). Then the process

5   server made the attempts: (1) on Wednesday, June 19, service was attempted at 6:49 p.m.; (3) on

6   the same day, service was attempted again at 9:00 p.m.; (4) on Thursday, June 20, service was

7   attempted at 11:30 a.m.; and (5) on the same day, service was attempted again at 1:07 p.m. *Id.*

8   No one answered the door on each attempt. *Id.*

9          Plaintiff's process server has attempted to contact Defendant Jackson via an undisclosed

10  number of phone calls and voice mails, to which Defendant Jackson has neither answered nor

11  returned. *See* Dkt. No. 56-4 (email exchange with WLM) at 3. Finally, on July 2, WLM updated

12  Plaintiff on the results of an additional credit check that morning, stating that no additional

13  address was found where service could be attempted. *Id.* at 2.

14         Plaintiff now brings the instant motion for alternative service, filed with the Court on

15  August 20, in the interest of completing service on Mr. Jackson. Dkt. No. 55.

16                              **II.    LEGAL STANDARD**

17         Any method of service must comport with constitutional notions of due process and must

18  be "reasonably calculated, under all the circumstances, to apprise interested parties of the

19  pendency of the action and afford them an opportunity to present their objections." *Rio Props.,*

20  *Inc. v. Rio Interlink*, 284 F.3d 1007, 1016–17 (9th Cir. 2002) (quoting *Mullane v. Cent. Hanover*

21  *Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Federal and state rules enforce this principle with

22  specific guidelines regarding the means and methods by which service of process should be

23  accomplished.

24

Federal Rule of Civil Procedure 4(m) establishes clear time limits for service:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion of on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.[1]

Service of process on an individual within a judicial district of the United States may be effected in accordance with authorized methods so provided by the law of the state in which service is to be made. Fed. R. Civ. P. 4(e)(1). In Colorado, parties to an action must be served personally by delivering a copy of the summons and complaint to the relevant party or upon another person authorized to receive said service of process. C.R.C.P. 4(e). Where personal service is unable to be accomplished, however, the court may consider an alternative method of service if a party files a motion, supported by an affidavit of the person attempting service, for an order of substituted service. C.R.C.P. 4(f); *see also Allen v. The Pinery, LLC*, No. C17-688, 2017 WL 3492872, at *1 (D. Colo. Aug. 15, 2017). The motion shall state (1) the efforts made to obtain personal service and the reason that personal service could not be obtained, (2) the identity of the person to whom the party wishes to deliver the process, and (3) the address, or last-known address of the workplace and residence, if known, of the party upon whom service is to be effected. C.R.C.P. 4(f). If the court is satisfied that:

> (1)   due diligence has been used to attempt personal service under section (e),
> (2)   that further attempts to obtain service under section (e) would be to no avail, and
> (3)   that the person to whom delivery of the process is appropriate under the circumstances and reasonably

---

[1] Under Colorado law, the time limit for service of process is more exacting and provides that a defendant must be served within 63 days after the complaint is filed with the court. C.R.C.P. 4(m). Like the federal rule, the consequence of failure to complete service within the stipulated time frame is dismissal without prejudice against that defendant, an order for service to be made within a specified time, or an extension in cases where good cause is demonstrated. *Id.*

1

2

> calculated to give actual notice to the party upon whom
> service is to be effective,

then alternative service, as deemed appropriate by the Court, may be authorized. *Id.*

### III.    DISCUSSION

Plaintiff seeks the Court's leave for alternative service on Defendant Jackson by mailing a copy of the summons and complaint to (1) the two addresses in Colorado at which he is believed to reside, (2) Defendants Booth and Carlson at the addresses at which they were personally served, and (3) the counsel of record for Defendants Booth and Carlson.

### A.    Due Process and Time Limit for Service

Here, Plaintiff has not demonstrated sufficient efforts to complete service upon Defendant Jackson in accordance with the time limit for service.

The Amended Complaint (wherein Defendant Jackson was first named as a defendant) was filed on April 5, 2024. Service was due by July 5. Fed. R. Civ. P. 4(m). Plaintiff not only failed to file its motion for alternative service until August 20—46 days after service should have been completed—but also failed to provide any explanation whatsoever for making the motion weeks after the deadline for service had already passed. Dkt. No. 55.

Necessary to, but missing from, Plaintiff's motion is a request for an extension of time to serve Defendant Jackson. *See id.* Local Civil Rule 7(j) requires any motion for relief from a deadline to "be filed sufficiently in advance of the deadline to allow the court to rule on the motion prior to the deadline." And this Court's Standing Order for All Civil Cases (which counsel for Plaintiff certified reviewing, *see* Dkt. No. 46), requires that motions for extensions of time "shall be filed at least three (3) business days in advance of the expiration of the relevant deadline." § III(A) (last updated May 2, 2024). That Plaintiff failed to comply with the local rules and this Court's standing order is grounds alone for denial of its request.

But Plaintiff further has not demonstrated good cause for extending time for service. Fed. R. Civ. P. 4(m). Plaintiff first contacted WLM to assist with completing service 47 days after the Amended Complaint was filed. *See* Dkt. No. 56 ¶ 3. Plaintiff references four attempts at completing service for Defendant Jackson at each of his purported properties. *See* Dkt. No. 55 at 4. But the attempts at the Wynkoop Property were made within a span of six days, all these attempts were on a weekday, and three of these four attempts were during working business hours. Moreover, attempts at the Milwaukee Property were made within a span of only 24 hours. Again, all attempts at service at this second address were made on a weekday—two of which were during working business hours, and one of which was when an employed person may very well already have left for work. Notwithstanding the fact that all attempts at service were made during short periods of time, the hours of the day at which Plaintiff attempted service are inconsistent with Plaintiff's argument that Defendant Jackson is employed and an executive colleague of Defendants Booth and Carlson.

In the approximately two months between the last attempt at service and filing the instant motion, Plaintiff also appears to have not initiated any other kind of action to complete service. The last attempt at service was made on June 20. Apart from vague and undated references to an undetermined number of phone calls made, voice messages left, and a single additional credit check for Defendant Jackson two days before the Rule 4(m) deadline for service, Plaintiff cites no further action. Nevertheless, Plaintiff again proceeded to engage in significant delay by waiting another 61 days after its last attempt before requesting the Court's leave for alternative service.

For all these reasons, the Court's intervention is unnecessary and alternative service would be inappropriate in this case. The Court does not find good cause for failure to complete service. Nevertheless, as explained below, the Court also finds that even if Plaintiff were diligent

and timely in requesting alternative service, Plaintiff fails to show due diligence in attempting personal service.

**B.      Alternative Service Under Federal Rule 4(e)(1) and CRCP 4(f)**

Under Colorado law, when personal service is unable to be completed, the Court may authorize and order an alternative method of service if it is satisfied that "due diligence has been used to attempt personal service," among other requirements. C.R.C.P. 4(f)(1).

Due diligence does not require that a plaintiff succeed in serving a defendant or exhaust every possible option in attempting to do so. *Minshall v. Johnston*, 417 P.3d 957, 961 (Colo. App. 2018) (quoting *Willhite v. Rodriguez-Cera*, 274 P.3d 1233 (Colo. 2012)). Rather, it refers to the diligence "reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." *Owens v. Tergeson*, 363 P.3d 826, 835 (Colo. App. 2015). "There is no objective, formulaic standard for determining what is, or is not, due diligence," and it is "not quantifiable by reference to the number of service attempts or inquiries into public records." *Id.* (quoting *Abreu v. Gilmer*, 985 P.2d 746, 749 (Nev. 1999)). Instead, courts must consider the *qualitative* efforts made to locate and serve a specific defendant, as tailored to fit the circumstances of each case, and inclusive of affirmative steps engaged to follow up on information or resources possessed and reasonably available to the plaintiff. *Owens*, 363 P.3d at 836–37 (finding due diligence unmet when plaintiff did not identify discrepancies in publicly recorded title chain); *Allen*, 2017 WL 3492872, at *2 (finding due diligence when service was attempted four times at three separate locations including a residence, mailbox center, and church purportedly frequented, in addition to several requests for others to accept service on plaintiff's behalf).

Plaintiff argues that alternative service is appropriate in the current case, citing *Minshall*'s "overwhelming" support for a finding of due diligence when outside investigators

1    were hired and four attempts to effect personal service were made. *See* Dkt. No. 55 at 4.

2    However, reliance on this holding is both misleading and misplaced. The basis for the court's

3    finding was grounded in quality of attempts—not quantity. The plaintiff in *Minshall* hired an

4    investigator to identify defendant's address, hired another investigator that attempted service four

5    times, investigated the address where defendant's vehicle was registered, attempted service at

6    defendant's last known "usual workplace," and tried to contact defendant through both their son

7    *and* realtor. 417 P.3d at 960–61.

8        In the present case, Plaintiff has indeed recorded eight attempts at completing service

9    upon Defendant Jackson. *See* Dkt. Nos. 56-1, 56-2. However, those efforts are unsatisfactory in

10   both quality and diversity. Attempts were made on two unconfirmed addresses, on weekdays,

11   and mostly during business working hours. Beyond these attempts and as previously discussed,

12   Plaintiff only proffers an undisclosed number of total credit checks (presumably two, as the

13   process server "ran his credit record *again*," Dkt. No. 56-4 at 2 (emphasis added)) in addition to

14   an undetermined number of phone calls made to and voice messages left with Defendant

15   Jackson's phone. *See id.* at 2–3. No other investigators or process servers were engaged. No

16   public records were evaluated. While Plaintiff identifies one address as potentially belonging to

17   Defendant Jackson's daughter (*see* Dkt. No. 56-1 at 2), no efforts were made to contact the

18   daughter to better determine his whereabouts. Moreover, while Plaintiff insists on the likelihood

19   that Defendant Jackson, as an executive colleague of Defendants Booth and Carlson, is in

20   communication with them (*see* Dkt. No. 55 at 5), Plaintiff describes no efforts to find Defendant

21   Jackson's place of work or any other effort beyond having the process server run a skip trace.

22       Plaintiff argues that due diligence does not require success in serving a defendant or the

23   exhaustion of every possible option in attempting to do so. *See* Dkt. No. 55 at 4. The Court

24   agrees. However, Plaintiff's efforts made must still indicate meaningful interest in actually

accomplishing said service upon defendant. As the United States Supreme Court noted in *Mullane*, "When notice is a person's due, process which is a mere gesture is not due process." 339 U.S. at 315.

Ultimately, Plaintiff's efforts are more reflective of gesture rather than sincere efforts to complete service. Plaintiff dragged its feet in attempting service by waiting nearly seven weeks after filing its Amended Complaint before first contacting process servers. The attempts at service appear superficial and lack a demonstration of good faith efforts to meet Plaintiff's duty of due diligence. Moreover, Plaintiff failed to further investigate available information, as discussed above. Therefore, Plaintiff has not demonstrated due diligence.[2]

### IV.    CONCLUSION

Accordingly, Plaintiff's Motion for Alternative Service (Dkt. No. 55) is DENIED and Defendant Peyton Jackson is DISMISSED WITHOUT PREJUDICE from this action.

Dated this 9th day of October 2024.

Tana Lin
United States District Judge

---

[2] As the Court does not find due diligence, it need not address any further requirements for alternative service under Colorado law.